FILED
CLERKS OFFICE

2005 OCT 25  A 11: 40

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH J. BARNES, individually And for all others similarly situated, Plaintiff, v. FLEET NATIONAL BANK and FLEETBOSTON FINANCIAL CORP., Defendants. | Civil Action<br><br>No. 01-CV-10395 -NG<br><br>Class Action |

### OBJECTION TO CLASS ACTION SETTLEMENT AND ATTORNEY'S FEE REQUEST

Class Member Nancy Feldman, 27 Rosalie Road, Newton, Massachusetts 02459, hereby objects to the proposed settlement of this class action. Mrs. Feldman intends to appear and argue at the fairness hearing scheduled for November 16, 2005 through her undersigned counsel. Mrs. Feldman had a qualified deposit account at BankBoston, N.A. and received a "change-in-terms" notice from Fleet National Bank in March or April 2000, and also received a mailed Class Action Settlement Notice.

**I.     The Proposed Settlement Is Not Fair, Reasonable and Adequate When Compared To The Likely Recovery At Trial or Upon Summary Judgment.**

The Plaintiff won this case and then threw in the towel. After the Court of Appeals reversed this Court and held that "Fleet's violation of TISA constitutes a per se violation of Mass. Gen. Laws ch. 93A, §2" in Barnes v. Fleet Natl. Bk., 370 F.3d 164 (1st Cir. 2004), all that remained to be done was to move for certification of the class, to determine the number of class members, and to enter judgment against Fleet in the amount of $25 multiplied by the number of class members. See id., 370 F.3d at 171 n.11. Fleet also would have been liable for Class Counsel's actual attorney's fees, in addition to

the Class' recovery. Id. The likelihood of success on the merits at that point was north of 95%.

Instead, Plaintiff, led by Class Counsel, decided to settle the case for what Class Counsel contends is 50% of the case's maximum value. This amount will be reduced by Class Counsel's attorney's fees before it is distributed to the Class, resulting in a net Class recovery of only 37.5% of the maximum damages. Class Counsel cannot seriously contend that they had only a 37.5% chance of prevailing in this case after the First Circuit's reversal. Therefore, a settlement that represents only 37.5% of a case's value is simply not fair, reasonable or adequate when the case had a greater than 95% chance of success.

In In re Compact Disc Minimum Advertised Price Antitrust Litig., the court noted:

> There is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement. In making this assessment, other circuits generally consider the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the result likely to be reached at trial. Specifically, the appellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration.

216 F.R.D. 197, 206 (D. Me. 2003). The Court need not go beyond the first of these factors – comparison of the proposed settlement with the likely result of litigation. As argued above, the likely result of litigation would have been a recovery at least twice as large as the one proposed here, and even larger when the source of the attorney's fees is factored in, *i.e.*, paid by Fleet if Plaintiff had prevailed at trial or upon summary judgment, paid out of the class' recovery in the proposed settlement.

2

In recognition of the manifest strength of this case, and the comparative inadequacy of the settlement, Class Counsel attempts in the Class Action Settlement Notice to articulate some weaknesses of its case that would justify a settlement for 50% of the maximum damages. Unfortunately for Class Counsel, the caselaw is all in Plaintiff's favor.

Fleet's position that 93A requires a person to show actual damages was directly refuted by Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381, 400 (2004). There, the Supreme Judicial Court specifically reversed and rejected a prior holding of the Court of Appeals that purported to limit the reach of the SJC's holding in Leardi v. Brown, 394 Mass. 151 (1985), that statutory damages are recoverable under c.93A where there has been an invasion of a legally protected interest, but no actual damages. "Thus, all [class members] will be entitled to statutory damages, without regard to whether the plaintiffs are successful in establishing that consumers were overcharged for the deceptively advertised cigarettes." Id. at 402. Indeed, two months before Aspinall was decided, the First Circuit came to the same conclusion in its decision in this case:

> Barnes does not claim that she suffered any specific financial loss. Rather, she claims only statutory damages.... Under Chapter 93A, damages in an individual action are "actual damages or twenty-five dollars, whichever is greater." [cite] In a class action where the statutory award of twenty-five dollars applies, the court multiplies the award by the number of class members. See Leardi v. Brown ... Chapter 93A also provide[s] for the award of a reasonable attorney's fee.

370 F.3d at 171 n.11.

After the First Circuit's reversal, there was no longer any question regarding each Class member's right to recover the amount of $25. Class Counsel's attempts to manufacture a weakness in its case are unavailing.

3

## II. The Requested Attorney's Fees Of 25 % Of The Settlement Fund Are Excessive.

One need look no further than the attorney's fee request to explain Class Counsel's willingness to settle this case just short of certain victory. If Plaintiff had prevailed against Fleet on summary judgment or after trial, Class Counsel would have been entitled to an award of their lodestar under G.L. c.93A, §9(4). See Fontaine v. Ebtec Corp., 415 Mass. 309, 326 (1993) ("To the extent that our cases may have been ambiguous on this point, we repeat [that] a fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law."). Fleet would have been liable for this amount in addition to the $25 million judgment in the Class' favor. Here, in contrast, Class Counsel is requesting a common fund fee that surely exceeds its reasonable lodestar. Class Counsel should not receive more in fees for a mediocre settlement than they would have if Plaintiff had prevailed at trial, but that is precisely what they have asked for here. See Brytus v. Spang, 203 F.3d 238, 247 (3rd Cir. 2000)("there remains the possibility that in some cases counsel for a class of plaintiffs may receive a higher fee award upon settlement than they would have received had the case proceeded to judgment").

Allowing Class Counsel to request a common fund attorney's fee in the event of a settlement, but limiting them to their reasonable lodestar if they win the case at trial, creates perverse incentives and rewards Class Counsel for achieving a sub-optimal outcome. Instead of having an incentive to maximize the Class' recovery, Class Counsel has an incentive to sell the Class short, because only through settlement can Class Counsel request a common fund fee award that exceeds its lodestar.

Therefore, the Court should closely scrutinize Class Counsel's fee request and limit it to a maximum of Class Counsel's reasonable lodestar, which would be their presumptive fee award if the Plaintiff were to prevail on the merits at trial or upon a summary judgment motion. See G.L. c.93A, §9(4).

### III. The Claim Form Requirement Is Improper.

Another way in which the Class has been harmed by the proposed ill-conceived settlement is that relatively few of them will recover anything due to the requirement that they fill out and return a Claim Form that must be signed under the pains and penalties of perjury. Class Counsel and Fleet know from experience with prior class action settlements that claim form submission rates by class members rarely exceed 10%, even when there is no requirement of signing under oath. When that daunting hurdle is added into the mix, the "take" rate in the proposed settlement is likely to be less than 3%.

The Claim Form requires Class members to attest that they had a deposit account with BankBoston in the Spring of 2000, and that they received a "change-in-terms" notice in March or April 2000. While most Class members will have no trouble recollecting the former fact, the vast majority of them will probably have no actual recollection of the latter. This will lead most Class members to decline to complete and submit a Claim Form, even though their receipt of a Class Action Settlement Notice makes it 95% or more certain that they did receive a change-in-terms notice.

Clearly, the parties must have an idea of who is included in the Class. Otherwise, they could not have estimated the maximum possible damages in the case or represented that the proposed settlement is 50% of the amount the Class would receive if Plaintiffs prevailed in Court. This Court has found that there are approximately one million members of the Settlement Class, and a Class Action Settlement Notice was mailed to

5

those persons identified from Fleet's records. The parties could have and should have simply mailed a check in the amount of $25 to each person so identified.

While Fleet will contend that the settlement notice list was over-inclusive, that factor should be more than offset by the fact that the notice was less than 100% successful. It is likely that more than 10% of the mailed notices were returned because the recipient had moved and the forwarding address has expired. If Fleet were permitted to retain the returned settlement checks for persons who are no longer at their 2000 addresses, that would more than offset any payments to persons who, although they were identified by Fleet to receive a Class Action Settlement Notice, are not actually Class members. The fact that some BankBoston account holders who are not Class members will receive a windfall is not a valid argument against a distribution plan that will deliver relief to 95% of the Class. After all, cy pres distributions deliver relief to persons who are by definition not Class members, and that form of relief is routinely approved in Class action settlements.

As the proposed settlement currently stands, fewer than 50,000 Claim Forms will likely be filed, leaving more than $8 million in the Settlement Fund to be distributed to cy pres recipients. The Court should not approve such a patently ineffective method for distributing relatively modest amounts to a largely pre-identified Class.

## IV. The Proposed Cy Pres Recipients Are Inappropriate.

"Cy pres" is short for "cy pres comme possible," which is French for "as near as possible." When there are unclaimed funds remaining in a class action settlement fund, "the court, guided by the parties' original purpose, directs that the unclaimed funds be distributed for the indirect prospective benefit of the class." In re: Airline Ticket Commission Antitrust Litig., 268 F.3d 619, 625 (8th Cir. 2001). A "court's choice among

6

distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members." Six Mexican Sorkers v. Arizona Citrus Growers, 904 F.2d 1301, 1307 (9th Cir. 1990).

Recently, a district court within this Circuit set forth the following criteria to be used when selecting cy pres recipients of unclaimed class action settlement funds, based upon its survey of prior appellate decisions:

> The cases and commentary also identify a number of factors to consider in approving any such cy pres distribution: *e.g.*, the degree to which the cy pres proposal will benefit class members; the degree to which it will promote the purposes of the underlying cause of action that has been settled; the minimization of administrative costs; ensuring that funds disbursed to a private body are used for purposes benefiting the class; holding the recipient accountable; the amount of spillover to non-class-members; and avoidance of having the funds merely replace other monies.

In re Compact Disc Minimum Advertised Price Antitrust Litig., 2005 U.S. Dist. LEXIS 11332 at *7 (D. Me. June 10, 2005) ("CD Antitrust") (a copy of this decision is attached hereto as Exhibit A).

When evaluated against these criteria, the three proposed cy pres recipients do not fare very well. First, this is a Massachusetts-only class action, affecting only residents of Massachusetts. Therefore, the two national organizations proposed as cy pres recipients are presumptively inappropriate. City Year National and the National Consumer Law Center serve national constituencies, and their work is not directed specifically toward Massachusetts consumers. Thus, these two organizations should not receive any of the settlement funds that may remain after class member claims are paid.

Moreover, all three proposed cy pres recipients fail to satisfy the other factors enumerated by the District of Maine above. Even though the Greater Boston Legal Services directs its services exclusively toward Massachusetts residents, it does not

further the goals and objectives underlying this lawsuit. The purposes of this litigation, stated broadly, are to promote timely, accurate and clear communications between financial institutions and their Massachusetts consumer customers. Objector Feldman does not know of any organizations dedicated to these purposes, but it is certain that Greater Boston Legal Services, City Year National, and the National Consumer Law Center are not among them.

The parties must return to the drawing board to come up with a more appropriate cy pres recipient or recipients. The parties need not do so until and unless there are funds remaining in the Settlement Fund after all claims are paid. Of course, a far preferable use of the Settlement Fund monies would be to pay them all to identified Class members, by sending checks to all of the persons who received mailed notice, as suggested above. If the parties adopt this suggestion, then they will not need to undertake the challenge of identifying an appropriate cy pres recipient.

The Maine court in CD Antitrust directed each of the proposed cy pres recipients in that case to provide the court with certain information in order to ensure compliance with the above-quoted factors. Objector Feldman urges this Court to direct the same requests for information to any proposed recipient of cy pres funds in this case. The responses to these requests by the three currently proposed recipients will likely demonstrate their unfitness. A failure to require cy pres recipients to provide this information would be an abuse of discretion. The information requested by the Maine court was:

    (1)    A brief proposal how the organization will use the funds in a way that is related to the interests of [class members], including specification of what portion will go to administrative costs;

    (2)    How that proposal, if funded, will result in additional benefit to those interests, and not just replace other monies;

8

(3) A commitment to implement the proposal if awarded the funds;
(4) A description of how and when the organization will report on the use of the funds; and
(5) A commitment to report to the Court.

Id. at *9.

## CONCLUSION

For the foregoing reasons, objector Nancy Feldman requests that this Court DENY approval to the proposed settlement. In the event that the Court approves the settlement, objector Feldman requests that this Court direct that pro rated settlement checks be automatically mailed to each recipient of the Class Action Settlement Notice, after awarding Class Counsel no more than their reasonable lodestar as attorney's fees. In the even that there is a cy pres distribution, objector Feldman requests that this Court require submission of the above-listed information to the Court by any cy pres recipient prior to receipt of any cy pres funds.

Dated: October 24, 2005

Respectfully submitted,
Nancy Feldman,
By her attorney,

John J. Pentz, Esq.
Class Action Fairness Group
2 Clock Tower Place, Suite 260G
Maynard, MA  01754
Phone: (978) 461-1548
Fax: (707) 276-2925

9



Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 11332**

*2005 U.S. Dist. LEXIS 11332, \*; 2005-1 Trade Cas. (CCH) P74,831*

IN RE COMPACT DISC MINIMUM ADVERTISED PRICE ANTITRUST LITIGATION

MDL docket No. 1361, (This Document Applies To Trowbridge, et al. v. Sony Music Entertainment, Inc. et al, Docket No. 2:00-MD-1361-P-H)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

2005 U.S. Dist. LEXIS 11332; 2005-1 Trade Cas. (CCH) P74,831

June 10, 2005, Decided

**SUBSEQUENT HISTORY:** Later proceeding at In re Compact Disc Minimum Advertised Price Antitrust Litig., 2005 U.S. Dist. LEXIS 13071 (D. Me., July 1, 2005)

**PRIOR HISTORY:** In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F. Supp. 2d 182, 2003 U.S. Dist. LEXIS 24856 (D. Me., 2003)

### CASE SUMMARY

**PROCEDURAL POSTURE:** In compact disc (CD) antitrust litigation, the court approved a settlement of a portion of the case dealing with members who purchased CDs through music clubs. In light of the modest benefit the members were to receive, the court reduced the request for attorney fees. It was impracticable to distribute the remaining funds. The court ordered the parties to identify charitable organizations to which the funds could be distributed.

**OVERVIEW:** Because it was impractical to cut and mail checks to the 8.1 million members of the class to distribute the remaining $ 265,000, the court ordered the parties to identify a list of charitable organizations to which the funds could be directed pursuant to a cy pres provision in the settlement agreement. The parties proposed three charities and an objector proposed one. However, the court required more detailed proposals. Thus, the court directed the parties (and the objection if he chose) to invite the respective organizations to present brief proposals on how the funds would be used in a way that was related to the interest of the music club members and respecting other concerns of the court.

**OUTCOME:** The court directed the parties and the objector to invite the charities to submit proposals about how the funds should be distributed.

**CORE TERMS:** music, jazz, charity, club, cy pres, recipient, unclaimed, abuse of discretion, case involving, settlement, distribute, antitrust, ties, geographic area, non-class-members, practically, spillover, approving, ordering, replace, thin, tax-exempt, charitable, recordings, recorded, musicians, objector, website, digital, dance

**LexisNexis(R) Headnotes** ✦ Show Headnotes

**COUNSEL:** [\*1] For STATE PLAINTIFFS, Plaintiff: FRANCIS E. ACKERMAN, ASSISTANT

ATTORNEY GENERAL AUGUSTA, ME; MICHAEL J. FLANNERY, DAVID DANIS LAW FIRM, ST. LOUIS, MO; RICHARD M. HAGSTROM, ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP, WALTHAM, MA; LINDA GARGIULO, ASSISTANT ATTORNEYS GENERAL, NEW YORK, NY; LIZABETH A. LEEDS, ASSISTANT ATTORNEYS GENERAL, TALLAHASSEE, FL; ALFRED C. FRAWLEY, III, PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLC, PORTLAND, ME.

For MARGARET ROY, VINCENT VANYSERLOO, Plaintiffs: MICHAEL J. FLANNERY, DAVID DANIS LAW FIRM, ST. LOUIS, MO.

For JO ANN TROWBRIDGE, Plaintiff: MARY JANE FAIT, WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC, CHICAGO, IL; MICHAEL J. FLANNERY, DAVID DANIS LAW FIRM, ST. LOUIS, MO; MICHAEL EVAN JAFFE, WOLF HALDENSTEIN ADLER FREEMAN & HERZ, NEW YORK, NY.

For ERINN BUCKLAN, Plaintiff: MARY JANE FAIT, WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC, CHICAGO, IL; MICHAEL J. FLANNERY, DAVID DANIS LAW FIRM, ST. LOUIS, MO.

For PRIVATE PLAINTIFFS, Plaintiff: ALFRED C. FRAWLEY, III, PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLC, PORTLAND, ME; JOSEPH C. KOHN, STEVEN M. STEINGARD, KOHN, SWIFT & GRAF, PC, PHILADELPHIA, PA; MICHAEL J. FLANNERY, DAVID DANIS LAW [*2] FIRM, ST. LOUIS, MO; GREGORY PAUL HANSEL, PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, LLC, PORTLAND, ME; MICHAEL J. BONI, KOHN, SWIFT & GRAF, PC, PHILADELPHIA, PA; JOHN R. BRAUTIGAM, Falmouth, ME.

For COLUMBIA HOUSE COMPANY, Defendant: JOSEPH W. MUCCIA, BROWN RAYSMAN MILLSTEIN FELDER AND STEINER LLP, NEW YORK, NY.

For DAVID PLIMPTON, Respondent: Pro se, CAPE ELIZABETH, ME.

For MICHAEL L BREWER, Claimant: Pro se, GEORGIA STATE PRISON, REIDSVILLE, GA.

**JUDGES:** D. BROCK HORNBY, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** D. BROCK HORNBY

**OPINION: ORDER ON CY PRES PROVISION OF SETTLEMENT AGREEMENT**

This portion of the multidistrict CD antitrust litigation deals with a class whose members purchased their CDs through music clubs. I previously approved a settlement of this portion of the case but, in light of the modest benefit music club members received, I substantially reduced the request for attorney fees. As a result, my Order of March 29, 2005, declared that approximately $ 265,500 remained. n1 I also determined that in light of the size of the class (8.1 million members), administrative costs in cutting and mailing checks made it impracticable to distribute these funds to class members. **[*3]**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 These funds are in the Plaintiffs' Notice/Fee/Incentive Fund, which was established in the initial Settlement Agreement. Interest has been earned in the amount of $ 24,965.32 through March 31, 2005, and taxes on that interest have been paid in the amount of $ 6,493. The lawyers' request for interest earned on fees awarded and expenses is DENIED; the request for $ 400 in the anticipated cost of the 2005 tax return is GRANTED. In light of the April 27, 2005, submission by the lawyers (Docket Item 357, docketed April 28, 2005), the total remaining for distribution, subject to further interest, is approximately $ 271,000.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Section 8.2 of the Amended Stipulation of Settlement provides that if any funds remain after ruling on the fee and expense application, "after hearing from all parties, the Court may order that . . . the funds be contributed to one or more music-related charities, including but not limited to charities that the parties shall identify for the Court's consideration within thirty (30) days of the **[*4]** Court's order." Rather than permit these funds to revert to the defendants (the other option under the Settlement Agreement), I ordered identification of proposed charitable recipients by April 28, 2005.

In response, the parties proposed three charities:

    (1) Jazz at Lincoln Center (www.jazzatlincolncenter.org);

    (2) Music for Youth (www.musicforyouth.org); and

    (3) National Guild of Community Schools of the Arts (www.nationalguild.org).

The parties have certified that these organizations have no ties to the parties n2 or the lawyers and that each, respectively, is a tax-exempt organization.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 In an abundance of caution, they have described the following relationships: some of the defendants are listed on Music for Youth's website as corporate contributors, several lawyers in the firms representing the parties have served on the boards of organizations that have made contributions to the proposed charities, and an executive from defendant Atlantic Records and an executive from defendant Warner Music Group each serve as directors of Jazz at Lincoln Center.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*5]**

In addition, an objector (who later withdrew his objection), William Weinstein, Esq., of New York City, has proposed a fourth recipient, namely:

(4) Radio Station WKCR-FM, Columbia University Radio in New York (www.wkcr.org).

Mr. Weinstein has provided evidence of its tax-exempt status and certifies that he has no ties to it, but I have no information whether it has any ties to the parties or the lawyers for the parties.

Detailed information about each of the proposed recipients can be obtained at their respective websites, listed above.

In brief summary, they pursue the following objectives that may be considered related to this case involving the distribution of music CDs: Jazz at Lincoln Center aims to further the development of jazz music via performance, education and broadcast events for audiences of all ages. Jazz at Lincoln Center's activities include transcribing jazz masterpieces from recordings to written form, creating and encouraging the dissemination of recordings of its events, and sponsoring a radio program, "Jazz from Lincoln Center." Music for Youth supports "innovative programs that make quality music education available to young people," and

creates **[*6]** scholarship opportunities for young musicians. The National Guild of Community Schools of the Arts provides "leadership, advocacy, and service" to community schools of the arts, which serve more than 380,000 students in forty-five states with programs in music, visual arts and crafts, dance, theater and drama, literary arts, and media arts. WKCR is a non-commercial, non-profit radio station with a focus on jazz music. As described by Ben Young, the Director of Broadcasting and Operations, in his letter regarding the distribution of funds in this case, the station's "mission entails preserving at their optimum -- on often obsolete' formats -- the recorded sound of the works and words of the artists themselves, and disseminating these as FM radio and digital audio around the nation and the world."

Because a judge presiding over the settlement of a class action has an independent responsibility to review the fairness of any settlement and not merely accept the parties' proposals or agreements, see Fed. R. Civ. P. 23(e)(1)(C), I have examined the cases and commentary on this type of proposal. When a court cannot distribute money to class members **[*7]** practically, some cases and commentary approve (sometimes reluctantly) what is called a *cy pres* remedy (borrowing the trust law term for alterations a court makes to the terms of a charitable trust when the trust can otherwise no longer be carried out). That is the device that Section 8.2 of this Settlement Agreement provides.

The cases and commentary also identify a number of factors to consider in approving any such *cy pres* distribution: e.g., the degree to which the *cy pres* proposal will benefit class members; the degree to which it will promote the purposes of the underlying cause of action that has been settled; the minimization of administrative costs; ensuring that funds disbursed to a private body are used for purposes benefiting the class; holding the recipient accountable; the amount of spillover to non-class-members; and avoidance of having the funds merely replace other monies. See, e.g., California v. Levi Strauss & Co., 41 Cal. 3d 460, 224 Cal. Rptr. 605, 715 P.2d 564 (1986). n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

N3 See In re Agent Orange Product Liability Litig., 818 F.2d 179 (2d Cir. 1987) (project must have a benefit to class members; must be consistent with the nature of the underlying lawsuit; must be consistent with the judicial function; should be designated in detail; should include a plan for supervision). I have considered the following cases where a *cy pres* award was approved: Powell v. Georgia-Pacific Corp., 119 F.3d 703 (8th Cir. 1997) (affirming the use of unclaimed funds for scholarship funds for black high school students in the geographic area around the factory at which the alleged racial discrimination occurred, noting the likelihood that the "scholarships [would] benefit the class members' younger relatives") and Nelson v. Greater Gadsen Housing Authority, 802 F.2d 405 (11th Cir. 1986) (approving an order that unclaimed funds be used to increase the energy efficiency of the apartment units in a case involving a dispute over tenants' utility allowances). I have also considered the following cases where a *cy pres* award was vacated by the appellate court: In re Folding Carton Antitrust Litigation, 557 F. Supp. 1091 (N.D. Ill. 1983), 744 F.2d 1252 (7th Cir. 1984), 881 F.2d 494, 502 (7th Cir. 1989), and 934 F.2d 323 (7th Cir. 1991); **In re Airline Ticket Commission Antitrust Litigation, 268 F.3d 619 (8th Cir. 2001)** (concluding that the distribution of unclaimed funds to Minnesota law schools and charities, which were unrelated to the subject matter of the litigation, was an abuse of discretion); Wilson v. Southwest Airlines, Inc., 880 F.2d 807 (concluding that the defendant and class counsel had equitable claims to the residual fund and that award of the funds to a charity chosen by the district court judge was an abuse of discretion); Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990) (holding that the distribution of all unclaimed funds to the "Inter-American Foundation" for distribution in Mexico was an abuse of discretion where the charity did not have a substantial record of service, the funds were not limited to specific projects, there was no procedure to ensure proper use of the funds, and the money

benefited a group "far too remote from the plaintiff class"); and In re Agent Orange Product Liability Litigation, 818 F.2d 179. Finally, I have considered the following cases where a *cy pres* award was made without specific appellate approval or disapproval: In re Motorsports Merchandise Antitrust Litigation, 160 F. Supp. 2d 1392 (N.D. Ga. 2001) (ordering distribution of unclaimed funds to various charitable organizations); Superior Beverage Co. v. Owens-Illinois, Inc., 827 F. Supp. 477 (N.D. Ill. 1993) (distributing varying amounts of money to each of fifteen applicants); Fears v. Wilhelmina Model Agency, Inc., 2005 U.S. Dist. LEXIS 7961, No. 02-Civ. 4911, 2005 WL 1041134 (S.D.N.Y. May 5, 2005) (ordering distribution to charities providing services to "the uninsured and women" in a case involving antitrust claims by models against New York modeling agencies); Jones v. National Distillers, 56 F. Supp. 2d 355 (S.D.N.Y. 1999) (donating excess funds from a twenty-year-old suit to a legal aid society, noting that there was no obvious cause associated with the class and that "the tie to the intent of the fund is thin, but not as thin as it would be if the donation served an entirely unconnected cause such as a dance performance or a zoo"). I have also reviewed Stewart R. Shepherd, Damage Distribution in Class Actions: The Cy Pres Remedy, 39 U. Chi. L. Rev. 448 (1971-72) and In re Holocaust Victim Assets Litigation, 302 F. Supp. 2d 89 (E.D.N.Y. 2004).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*8]**

I attempt to apply those factors here. By their purchase of music CDs, music club members have demonstrated that they want to listen to music on their own terms. But I cannot determine the type of music; the offerings are wide-ranging. Likewise, the membership of the class is not restricted to any geographic area, but is nationwide. Given the dramatic pace of technological changes in music listening since this lawsuit was filed (digital music exchange, etc.), I cannot confidently determine even what medium music club members may now prefer to use. I have already determined that these remaining funds cannot practically be distributed to the music club members. How, then, to benefit them as nearly as possible? That is a substantial challenge.

I can say that, by definition, music club members are vitally interested in the availability of recorded music and in the performance of music and of musicians. Thus, the proposed recipients here are not necessarily wide of the mark. It is also apparent that a spillover benefit to non-class-members will be unavoidable given the inability to distribute the funds directly to class members. I can also say that the purposes of antitrust deterrence **[\*9]** are furthered by not allowing reversion of these funds to the defendants.

But in light of the factors I have described, I do need more detailed proposals. Accordingly, I **DIRECT** the parties (and the objector if he chooses) to invite the respective organizations to present:

(1) A brief proposal how the organization will use the funds in a way that is related to the interests of music club members, including specification of what portion will go to administrative costs;

(2) how that proposal, if funded, will result in additional benefit to those interests, and not just replace other monies;

(3) a commitment to implement the proposal if awarded the funds;

(4) a description of how and when the organization will report on use of the funds; and

(5) a commitment to report to the Court.

I understand that the nature of the proposals may depend upon the proportion of the funds that I award to a particular recipient. Any organization is free, therefore, to craft its proposal

to reflect different levels of any award I might make.

The submissions, if any, shall be filed by July 22, 2005.

**SO ORDERED.**

**DATED THIS 10 DAY OF JUNE, 2005**

**D. BROCK HORNBY**

**UNITED [*10] STATES DISTRICT JUDGE**

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 11332**
View: Full
Date/Time: Wednesday, October 19, 2005 - 3:48 PM EDT

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- 🇶 - Questioned: Validity questioned by citing refs
- ⅄ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 24, 2005 he served a true copy of the foregoing document by first class mail on each of the counsel listed below.

Yvonne W. Rosmarin, Esq.
58 Medford Street
Arlington, MA  02474

Daniel A. Edelman, Esq.
Edelman Combs Latturner & Goodwin LLC
120 S. LaSalle Street, 18th floor
Chicago, IL  60603

Joseph L. Kociubes, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110

_____
John J. Pentz