**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBORAH J. BARNES,           )<br>            Plaintiff,                        )<br>                                               )<br>v.                                            )<br>                                               )<br>FLEET NATIONAL BANK, N.A.,  )<br>            Defendant.                    ) | 01-10395 NG<br><br>Judge Gertner |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
TO REQUIRE OBJECTOR FELDMAN TO POST APPEAL BOND**

Objector Nancy Feldman and her son-in-law Attorney John Pentz ("Feldman/Pentz") persist in arguing that the class would be better off if the settlement monies were differently allocated despite the fact that (1) Fleet has the right to back out of this settlement if it is not approved in toto, (Settlement Agreement ¶ 15; May 22, 2006 Order of Judge Zobel at 2), and (2) legal developments since the settlement indicate that the class would be likely to recover less in the absence of this settlement, Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 840 N.E.2d 526 (2006).

While Feldman/Pentz purport to represent the settlement class here, they cannot.  Their positions and arguments have shown that they are not adequate to represent the interests of the class in this case and that their appeal is frivolous.  Moreover, the familial relationship between Attorney Pentz and his objector/mother-in-law presents irreconcilable conflict of interest issues. Even were this ill-advised appeal somehow to succeed, the class members would probably receive very little, or nothing, because Fleet would most likely back out of the settlement.

Class members should not have to wait eighteen months for this appeal to fail.  They are entitled to their money now. As is typically the case, a substantial number of class members will likely change residence address during the appeal such that they may never receive the check to

1

which they are entitled under this settlement agreement even if the appeal fails. Feldman/Pentz's suggestion that the appeal be expedited would reduce, but not eliminate the real problem: this appeal is frivolous.

This Court should thus require Feldman/Pentz to post an appeal bond in the amount of $675,111.60, in order to protect the interests of the class.

**I.      An Appeal Bond is Appropriate Because Feldman/Pentz is Inadequate to Represent the Class.**

In appealing the orders granting final approval of this settlement Pentz and Feldman assert that they represent the interests of the class in this case. They are therefore, in effect, purported "class representatives." However, the decisions are clear that a class representative may not be related to her attorney because of conflict of interest problems. Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 309 (D.Mass. 1987) (disqualifying as inadequate class representative who was son of proposed class counsel); Zylstra v. Safeway Stores, Inc., 578 F.2d 102, 104 (5th Cir. 1978) ("An attorney whose fees will depend upon the outcome of the case and who is also a class member or closely related to a class member cannot serve the interests of the class with the same unswerving devotion as an attorney who has no interest other than representing the class members."); Susman v. Lincoln American Corp., 561 F.2d 86, 90, 96 (7th Cir. 1977) (two proposed plaintiffs inadequate representatives because one was law partner and one was mother of proposed class counsel).

The most recent appellate case on the issue is instructive. In Petrovic v. AMOCO Oil Co., 200 F.3d 1140, 1154 (8th Cir. 1999), the court affirmed disqualification of proposed class counsel because, "In situations where there is a close familial bond between a class counsel and a class representative, it seems to us that there is a clear danger that the representative may have

some interests in conflict with the best interests of the class as a whole when making decisions that could have an impact on attorney's fees." Id. at 1155.  The Eighth Circuit also noted that disqualification was particularly appropriate in that case because class counsel "was not very forthcoming with [the information regarding the familial relationship.]"  Similarly, in this case, Feldman/Pentz did not disclose their close familial bond to the Court in their objection.

Pentz has represented his close relatives in at least four other cases, as exposed for the first time in plaintiff's motion.  His nonchalant response to this revelation (Opposition to Appeal Bond Motion at p.8) indicates that he does not understand the intricacies of class actions.  His reference to the ethical rules is also addressed in Petrovic, supra: "The lack of a prohibition on the "appearance of impropriety" in the Rules of Professional Conduct does not alter the underlying principle that an attorney owes undivided loyalty to the client." Id. at 1155.  An attorney cannot possibly adequately protect the interests of thousands of unnamed persons when his primary client (who purportedly represents that class) is his mother-in-law.

This inability is illustrated through Feldman/Pentz's argument that the First Circuit has done away with its approval of a bond requirement in a case such as this.  Despite the unreported and non-controlling decisions cited by Feldman/Pentz, the law of the First Circuit is clear: appeal bonds are an approved method of deterring frivolous appeals.  The only reported case from the First Circuit on the subject is Sckolnick v. Harlow, 820 F.2d 13, 14 (1st Cir. 1987), which involved a similarly litigious appellant, but much lower stakes than this appeal.

The two issues on appeal in Sckolnick, related to whether summary judgment for defendant was appropriate in a case alleging that defendant discriminated against plaintiff because of his religion in the sale of a wood lot, and whether the district court erred in requiring a $5,000 appeal bond in order to curb the *pro se* appellant's litigiousness.  The First Circuit

affirmed the bond issue:

> [A]lthough the district court did not expressly make a finding that the appeal on the merits was frivolous, we note that defendants' motion below requesting a bond sought "security for the costs, including attorneys' fees, which may be awarded by the United States Court of Appeals for the First Circuit to [defendants] pursuant to Fed. R. App. P. 38 and 39." Thus, the district court's decision to set the amount at $ 5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility. Without in any way presaging our ultimate disposition of plaintiff's appeal in no. 86-1774, on preliminary examination of the merits of that appeal we cannot say that the district court abused its discretion in judging it to be frivolous. We note, also, that defendants introduced evidence below that plaintiff is a litigious *pro se* who has filed numerous lawsuits in state court.[1]

Sckolnick, 820 F.2d at 15.  In the instant case, the Court should order Feldman/Pentz to post bond because, as demonstrated in plaintiff's motion, Attorney Pentz, through his clients, is a litigious objector who has filed numerous appeals arguing basically the same thing Feldman/Pentz is arguing here: that attorney's fees are too high.

Feldman/Pentz fails to mention that the case they rely heavily upon, Direct Purchasers v. Smithkline, was known as In re Relafen in the district court, a case with substantial prior history that, itself, demonstrates why an appeal bond is appropriate here, and why Feldman is inadequate to represent the class.  In re Relafen, case no. 01-12239 (D.Mass), appeal docketed and dismissed May 5, 2006 *sub nom* Direct Purchaser v. Smithkline, appeal no. 05-2846 (1st Cir.).  Attorney Pentz and his objector client in that case appealed the decision overruling their objection to attorney's fees in a percentage-of-fund method settlement.  The court in Relafen stated that "in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar."

---

[1] That Sckolnick may have been "implicitly criticized" in an unpublished Illinois district court case is irrelevant because Sckolnick is controlling precedent in the instant case.

In re Relafen Antitrust Litig., 231 F.R.D. 52, 77 (D. Mass. 2005) (citing In re Thirteen Appeals, 56 F.3d 295, 307 (1st Cir. 1995)). Judge Young also noted, contrary to Feldman/Pentz's position here, that "The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." In re Relafen, 231 F.R.D. at 81.  The similarities between that case and this one are striking.

Feldman/Pentz also fails to mention that the objectors in In re Relafen/Direct Purchasers settled the appeal relating to excessive attorney's fees for $500 to each of the five objectors and $97,500 in attorney's fees, Exhibit J, to which class counsel agreed only in order to short-circuit the potential damage to the class that an appeal would cause.  Exhibit K at ¶ 16.  The settlement was apparently orchestrated by Attorney Pentz, who signed the motion to approve it.  Exhibit L. No additional benefit was gained for the class.[2]

The above "settlement" is illustrative of why Attorney Pentz is inadequate here as presumptive counsel for the class.  Attorney Pentz was apparently willing to "sell out" for approximately $20,000[3] when representing an apparently unrelated client; when he represents his mother-in-law, as here, a result even more detrimental to the class might be expected.

**II.     Feldman/Pentz's Appeal Will Be Frivolous.**

Feldman/Pentz identify in their opposition to this motion three issues that they intend to bring on appeal: (1) whether the Court abused its discretion in not doing a lodestar cross check; (2) whether the Court must make a threshold finding that it is impracticable to distribute

---

[2] The In re Relafen/Direct Purchasers history also undercuts Feldman/Pentz's promise to appeal any order requiring them to post a bond.  What Attorney Pentz really wants is attorney's fees, and his mother-in-law client, who may even benefit indirectly from these fees, is helping him do so.

[3] $97,500 in attorney's fees split five ways amounts to $19,500 each, plus $500 per objector equals $20,000.

settlement funds to the class members before a *cy pres* distribution may be made; and (3) whether the *cy pres* funds should be redistributed to the class members.  Each of these arguments fails flatly on appeal.

The First Circuit has explicitly held that the percentage of the fund method ("POF") is an acceptable and appropriate way of allocating attorney's fees in a fee-shifting case:

> Given the particularities of common fund cases and the fact that each method, in its own way, offers particular advantages, we believe the approach of choice is to accord the district court discretion to use whichever method, POF or lodestar, best fits the individual case.

In re Thirteen Appeals, 56 F.3d 295, 308 (1st Cir. 1995).  The First Circuit in In re Thirteen Appeals did not do a "cross-check" with the attorneys' lodestars.  Nor could it have done so, because the "majority of the [individually retained plaintiffs' attorneys] did not maintain time records" at all.  Id.  This Court's ruling on fees was based on sound analysis of In re Thirteen Appeals and on this Court's opinion of counsel's work and conduct in the case.  (December 22, 2005 Memorandum Opinion at 7-8).  The First Circuit has spoken on this issue, and Feldman/Pentz will lose.  Their proposed appeal on this issue is, thus, frivolous.

Feldman/Pentz also apparently intends to attack on appeal whether "a court must first make a threshold finding that it is impracticable to distribute settlement funds to the class members before a *cy pres* distribution may be made."  (Opposition to Appeal Bond Motion at p. 5).  This issue is, indeed as Feldman/Pentz describes, one of "first impression" — Feldman/Pentz did not raise this issue in their objection papers — and, therefore, it has been waived.  Attorney Pentz is no doubt familiar with the requirement that an objection be fully developed in the district court before it may be raised in the appellate court.  "Unfortunately for the objector [Hannah Feldman, represented by Attorney Pentz], she did not articulate her argument regarding

fee-setting methodology to the court below." Taubenfeld v. Aon Corp., 415 F.3d 597, 599 (7th Cir. 2005) (affirming fee award of 30% in POF settlement where district court considered only POF fee award data from similar cases in the district, the quality of legal services rendered and the contingent nature of the case)

Feldman/Pentz finally suggests that the Court should redistribute the *cy pres* award to the class members. This is a very bad idea, and shows why Feldman/Pentz is inadequate to present arguments for the class. Paragraph 15 of the Settlement Agreement in this case states that if any portion of the settlement other than attorney's fees is invalidated the parties may repudiate the settlement in its entirety. Were this to happen, Fleet would likely be happy to do so because the settlement agreement was negotiated and signed before the Massachusetts Supreme Judicial Court, in Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 840 N.E.2d 526 (2006), held that "a plaintiff seeking a remedy under G.L. c. 93A § 9, must demonstrate that even a *per se* deception caused a loss." 445 Mass. at 799, 840 N.E.2d at 533. Hershenow could have presented a substantial obstacle to plaintiff's obtaining anything close to this settlement had it been decided even a few months earlier.

In other words, had plaintiff not settled when she did, the hundreds of thousands of class members might, at best, be splitting $500,000 under the Truth in Savings Act, 12 U.S.C. §§ 4301, *et seq* ("TISA"), rather than the $12.5 million they obtained in this settlement.

Feldman/Pentz state that their *cy pres* re-distribution scheme stems from the Hershenow decision itself, but cite no authority for altering the structure of a settlement agreement based on legal developments that happen after the fact. Aside from destroying this settlement, Feldman/Pentz's scheme just makes no sense. The very *purpose* of settling a case is to short-circuit legal and factual uncertainties in favor of certain resolution. Permitting "adjustments" to

an agreement post-settlement defeats that purpose and would dissuade parties from settling at all.

Feldman/Pentz's reckless appeal, thus, risks everything for the class and nearly nothing for Feldman/Pentz.  Feldman/Pentz should have to post a bond in order to protect the class.

### III.   Plaintiff Has Not Requested a *Supersedeas* Bond.

Feldman/Pentz's suggestion that the requested bond is akin to a *supersedeas* bond makes no sense.  "The term 'supersedeas bond' traditionally describes a bond designed to secure the value of the judgment, not a bond that simply secures costs on appeal."  J. Perez & CIA., Inc. v. United States, 747 F.2d 813, 815 (1st Cir. 1984).  Appellee has not asked that the Court require Feldman/Pentz to post bond to cover the $12.5 million value of the judgment they are holding up.  As stated in plaintiff's moving papers, the requested bond covers only attorney's fees, costs of appeal and interest on the judgment to protect the class members' present monetary interests.

Feldman/Pentz's characterization of the bond in this case as supersedeas is as frivolous as the rest of their arguments.  Feldman/Pentz should be required to post the requested $675,111.60 bond.

### V.   Not Holding a Local Rule 7.1 Conference was an Oversight that has been Corrected.

Plaintiff's not holding a Local Rule 7.1 conference until after the motion had been filed was an oversight that has been corrected.  Plaintiff held such a conference on August 8, 2006, and filed a certification to that effect.  Plaintiff will certainly re-file this motion as suggested by Feldman/Pentz if the Court finds this appropriate.  The August 8, 2006, conference and Feldman/Pentz's opposition brief indicate that any such conference before the motion was filed would have been futile, anyway.[4]

---

[4] Plaintiff is considering Feldman/Pentz's suggestion that plaintiff request dismissal of the appeal. Any such motion in the First Circuit, however, would not affect this motion.

**VI.      Conclusion.**

For the forgoing reasons, plaintiff's motion to require Feldman/Pentz to post bond in the amount of $675,111.60 should be granted.

                                                            Respectfully submitted,

                                                            /s/ Alexander H. Burke

Yvonne W. Rosmarin
BBO #566428
Law Office of Yvonne W. Rosmarin
58 Medford Street
Arlington, MA 02174
(781) 648-4040

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Alexander H. Burke
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor.
Chicago, IL 60603
(312) 739-4200


T:\6966\Pleading\Plaintiff's Reply in Support of Bond Motion final_Pleading.wpd

**CERTIFICATE OF SERVICE**

I, Alexander H. Burke, hereby certify that on March 13, 2006, I caused a true and accurate copy of the foregoing documents to be served via United States mail upon the following parties:

Alan S. Kaplinsky
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street
Philadelphia, PA 19103-7599

Colman M Herman
1200 Adams Street
Dorchester, MA 02124

Margo Schlanger
25 Lenox Place
St. Louis, MO 63108

Saghir Qureshi
11 Goodall Drive
Scarborough ON., CANADA M1B 5E1

/s/ Alexander H. Burke
Alexander H. Burke